The next case on the call today is number 1 2 7 8 3 7 John Givens versus the City of Chicago agenda number 14. Council for the appellant you may proceed. May it please the court Ellen McLaughlin on behalf of the City of Chicago. Plaintiffs Dudley Givens and Strong broke into an electronics store and loaded stolen merchandise into a officers responded banging on the garage door and telling them to come out peacefully. Plaintiffs instead smashed the van through the steel garage door directly into the group of officers. The officers shot at the van until it stopped moving. Dudley and Givens were convicted of multiple offenses including aggravated battery of a peace officer and the first degree felony murder of Strong. As I'll explain Dudley and Givens claims against the city are barred by collateral estoppel because facts essential to their criminal convictions defeat their civil claims. The city is also entitled to judgment on Strong's claim which went to trial based on the jury's special findings that the officers conduct was not willful and wanton. To begin with Dudley and Givens claims a defendant with a criminal conviction is collaterally estopped from contesting facts established by that conviction in a civil proceeding. Here Dudley and Givens were convicted of multiple offenses including aggravated battery and felony murder. So first the court should identify what facts were conclusively established by those convictions. The aggravated battery conviction established that Dudley and Givens smashed the van through that garage door knowing that it was practically certain an officer would be in their path and actually struck an officer. That establishes intentional criminal conduct. Battery is an intentional tort. It requires a mens rea of knowledge. Thus again Dudley and Givens were it was practically certain that they would hit a police officer. Now for their part Dudley and Givens argue that despite the battery conviction a civil jury could nonetheless find that they were merely recklessly willful and wanton. That is not possible. Knowledge and recklessness are mutually inconsistent mental states and therefore a finding by the criminal jury that Dudley and Givens were reckless. Therefore Dudley and Givens' criminal convictions for aggravated battery established their intentional misconduct under civil tort standards. Now the conviction of first degree felony murder of Strong in turn established that Dudley and Givens' actions proximately caused the police to shoot at the van which caused their own injuries and their own damages. Together these two convictions establish that Dudley and Givens' intentional tortious conduct proximately caused their own damages. They are stopped from relitigating those facts. And those facts bar their recovery against the city because a party whose intentional misconduct proximately caused damages is barred from recovering those same damages from another alleged tortfeasor. Yes. In Poole and in Ziarko this Court reaffirmed what were before them long-standing common law principles that intentional tortfeasors cannot shift liability for damages they caused to other alleged tortfeasors. So for example in Ziarko this Court stated that where an injury arises from a party's own quote deliberate wrong that party quote should not be afforded the equitable benefit of shifting a portion of that liability to another tortfeasor. So here Dudley and Givens' own deliberate wrong caused their injuries and therefore they too cannot shift liability for those injuries and their damages to the city. And indeed there's an important policy reason to apply this bar to a situation like this. It's very basic. People should not be able to seek a windfall based on their own intentional misconduct. Indeed Dudley and Givens in turn appointed to no case where a plaintiff who was convicted of an intentional felony was allowed to recover in tort for injuries that were caused by that very same felonious conduct. And for that reason the address the points relied on by the appellate court in reversing and explain to you why those were incorrect. So first the appellate court stated that the criminal prosecution did not conclusively determine whether under civil standards Givens and Dudley were by degrees intentionally or recklessly willful and wanted in bringing about their own injuries. Now criminal cases as you know never apply civil standards. That doesn't make sense. The court's job in the civil case is to determine what facts were established by the criminal conviction and then itself evaluate the effects of those established facts under the civil standards. Here the appellate court simply didn't do that. But the facts do establish that Givens and Dudley engaged in conduct that was intentionally willful and wanted under the civil tort standards. Now counsel, you know the argument that look reasonable force was not used, is that relevant? No, not to this point your honor. It was obviously something that was relevant in the were they able to bring the civil claim. But our argument here as to Dudley and Givens is that their damages were caused by their own intentionally tortuous conduct. So we have conclusively established that the conduct was intentional and we have conclusively established that it was the proximate cause of the damages. And that's what we're relying on for the bar. And when we're just looking at that, it doesn't matter then what the conduct of the other tortfeasor was, because the bar applies. And that's why for purposes of this argument, we're not looking at whether the city's conduct was reasonable, was it negligent, was it reckless. Because it's a bar full stop. And so we wouldn't consider even though you're saying the defendants were the proximate cause, we wouldn't consider whether or not in the civil case, whether or not the city was also a proximate cause? Not for purposes of the collateral estoppel analysis, no. Because if the bar applies, and that's the argument, the bar applies, then we don't get to go in and talk about what that other joint tortfeasor did. Because that's not the way that this is addressed. If you look at Poole and Ziarko, there's a bar, and there's no discussion of, well, let's also look at the other joint feasor's conduct. You simply don't. So it's quite, it becomes a very clear application of the bar. I think you don't get into that other question. Although exactly, that is exactly a point that the appellate court relied on. And so let me just cover that a bit further. Because the appellate court did say that the criminal court could not have considered, did not consider whether the officer's actions or admissions directly or immediately caused the injuries. Now, as I've explained, that's, we think that's irrelevant. Because whether Dudley and Gibbons' civil claims are barred depends on whether their own conduct caused their damages. Was it intentional, and was it the proximate cause of the damages? It doesn't depend on what the officers did. But in fact, the criminal jury did consider, and Dudley and Gibbons argued this vociferously, whether the officers' actions broke that chain of causation between their conduct and Strong's death, and found that it did not. Ms. McLaughlin, on those special interrogatories, could you reach that for me, one and two? Were they compound questions? And if they were, should they have been allowed? Absolutely, Your Honor. As to the special interrogatories, the question of whether they are improper was first of all waived, because this issue of whether they were compound or otherwise improper was never brought to the trial court during the jury instruction conference. It was raised only after the verdict had been rendered. And that was too late. So the first point I have to make is that it's important, we think, to enforce that waiver here. But regardless, even had these objections been made at the appropriate time when the court could have addressed any potential problems, there were no potential problems. The interrogatories were in proper form. So as to the issue of whether they're compound, Strong argues that they were impermissibly compound, because they used complete legal definitions of intentional and reckless, willful and wanted conduct. So those definitions of intentional and reckless, willful and wanted conduct necessarily include the term without legal justification, along with the explanation of the relevant mens rea. That was necessary to offer the full definition of willful and wanted conduct. It was also necessary for these interrogatories to properly check the potential verdict. So interrogatory number one asks whether the officers who used deadly force engaged in a course of action without legal justification, which showed an actual or deliberate intention to harm David Strong. And of course, interrogatory number two is parallel with the applicable mens rea for recklessness. So each of these interrogatories asks about one issue on which Strong bore the burden of proof. Was the officer's conduct willful and wanted? Now, there are two terms in the questions, because that is how willful and wanted conduct is defined. But there is no hard and fast rule that an interrogatory that includes more than one term is automatically impermissible. Instead, what this Court has said in Simmons v. Garces is that we read the interrogatory in context with the Court's other instructions to determine how it was understood and whether the jury would have been confused. And here, the interrogatories were identical to the language of the jury instructions. They're a little different. What's the difference between, one, talking about David Strong, and two, talking about the safety of others? Do you read that as being dispositive in any way? I don't review it as being dispositive, Your Honor, but I can address it. So they are, the language of the interrogatory as to reckless, willful, and wanted conduct uses others. Interrogatory number two, which asks about reckless, willful, and wanted conduct, used the word others. Interrogatory number one is asking about intentional conduct toward David Strong, and it uses David Strong's name. So as to the first interrogatory, that was correctly stated because the question, Strong is the plaintiff, so the question is, was the officer's conduct toward him intentionally willful and wanted? So it was appropriate to mention David Strong. He's the plaintiff. The interrogatory properly focused on him. It was not too narrow. As to the second interrogatory, it uses the language of the instructions, which is the safety of others. And Strong has argued that when the interrogatory says safety of others, that that might have confused the jury, because the jury might have concluded that that meant everybody except for David Strong, that safety of others maybe meant only people passing by on the street and not the men in the van, and therefore a special finding that the officers were not reckless as to some passerby was not irreconcilable with a verdict that they were reckless as to Strong. So I think that's the argument they're making to try to reconcile this, but it doesn't work because it's completely ludicrous given what the parties explained to the jury during the trial. So both parties explained to the jury that when including the men in the van, and especially David Strong. So Strong's counsel tells the jury, you should answer yes to interrogatory number two, because, quote, there was a conscious disregard for Mr. Strong's safety that caused his injury. That's record 2390. He said this multiple times. And at record 2483, he says that that interrogatory should be answered yes, because the officers were He never said it meant people on the street or passerby. And the city's counsel also explained, quote, there is no evidence that any of these officers acted with an utter indifference or conscious disregard for David Strong. That's record 2459. So this explanation that others includes David Strong is also included in the issues instruction. If you look at C1600, it also refers to Strong. So there's just no question that the jury isn't going to understand that Strong is somebody who's included in this definition of reckless, willful, and wanting conduct is used in special interrogatory number two. And how do you read the answer to the third interrogatory? Well, I don't think, I mean, first of all, it's not, we don't think that that one is of particular relevance here, because nobody is arguing that that one controlled the verdict here. However, it was, that interrogatory asked about one theory of legal justification. The jury said that the city had not satisfied that particular theory of legal justification, so that the city was not entitled to judgment based on that interrogatory. Now, we've talked about the interrogatories in the sense that they, that first Strong waived any objections to form. And I've explained why we submit they were in proper form. But, and then finally, the next question is whether they were reconcilable with the general verdict. And I believe in response to Justice Burke's question, I've gone over that. But just to review, Strong, again, argued interrogatory number one was too narrow because it focused on David Strong. As I've explained, that was a proper expression of whether the officer's conduct was intentional toward David Strong. It was not too narrow. And the answer to interrogatory number two was clearly, as explained to the jury, directed at whether the officers were reckless as to the men in the van. The trial court heard the evidence, and it heard the parties' arguments alongside the jury, along with the jury for the whole more than a week that this case proceeded. And it, it called Strong's argument that the interrogatory two was referring to people other than him, that interrogatory number one was too narrow, an entirely self-serving theory that Strong invented only after losing a trial. That is exactly what it is. This court should reject Strong's self-serving argument and reinstate judgment for the city based on the jury's special findings. I do, as I have time, I want to go back to the issue of collateral estoppel briefly. There was one point I hadn't addressed that was relied on by the appellate court, which was that the court said it was manifestly unjust to permit Strong's case to proceed, but not the cases of Dudley and Givens. I think that it's absurd, but bears a moment of our time, because it completely misapplies the precedent about when it is fair to apply collateral estoppel. Fairness in this context turns on whether the party that is to be estopped had the opportunity and incentive to litigate the issues decided in the prior case. And that comes from this court's decisions in Tularico and Savickas. Opportunity incentive. Here, Dudley and Givens had both opportunity and the incentive to litigate the criminal charges. They went to trial on those charges. They vigorously defended against extremely serious criminal charges, including felony murder. And therefore, it's not unfair to apply estoppel to facts that were essential to those convictions. Strong, of course, was differently situated. He never litigated those issues because he died and could not be criminally charged. But it's hardly unfair to apply collateral estoppel to those who were prosecuted and did have an opportunity to defend the charges. In fact, if there's unfairness here, it would be unfair to the city not to apply estoppel merely because Strong died as a consequence of Dudley and Givens' own conduct and therefore could not be prosecuted. It's not unfair to apply collateral estoppel here, and Dudley and Givens' claims should be held barred. If the Court has no further questions at this time, I'll speak to you again in my rebuttal. Counsel, I have one question. Would you clarify exactly what are you seeking as it relates to Strong? We are seeking that the verdict on the jury's special findings be reinstated, which means that judgment would be reinstated for the city based on the jury's special findings, which of course means that the judgment of the appellate court should be reversed. If there are no further questions, thank you very much. Good morning. Madam Chief Justice, members of the Court, counsel, for the record, my name is Lynn Dowd, and I'm here with my co-counsel today, Robert Napleton, David Gallagher, and Jennifer Barron, and we represent two of the three appellees, John Givens and Teresa Daniel, who is the special administrator of the estate of David Strong, who is deceased. Leland Dudley will be adopting our argument today as they did with our brief. May it please the Court. Your Honors, I don't intend to regurgitate the arguments set forth in our brief, but I would hope to kind of clarify and crystallize and simplify our position, and to do so, it only requires that we take a refresher course on what willful and wanton conduct is in special interrogatories. Willful and wanton misconduct in this case, and as we know, is defined in the jury instructions, and this Court, in a variety of precedential decisions, delineated between intentional willful and wanton misconduct and reckless, going back to this Ziarko case that actually I argued 30 years ago before this Court. The distinction between willful and wanton, as far as intentional and reckless types of willful and wanton, is only relevant to the defendant, because it arises with respect to the defendant's right to seek contribution. It is not an element of the plaintiff's willful and wanton cause of action. For the plaintiff, we have to prove duty, breach, proximate cause, and damages. After we've proven that, which we did, because the jury would have never gotten to contribution if we did not, so the jury, importantly, determined that the city was willful and wanton. We did not ask the jury to make a distinction between the city's willful and wanton misconduct, whether it was intentional or reckless, in firing 76 rounds of bullets into a van. Had we done that, and had we, through the jury instructions, made a delineation between intentional and reckless willful and wanton misconduct, and if there, the jury made a determination, the city was intentionally willful and wanton, the city would have no right of contribution against us. But that didn't happen, and we accept that. So once we've proved our case in chief, the jury was then asked to apportion fault between the parties. And I know the academics for the past 30 years have wondered about the open question, what about the plaintiff's status, if it's intentionally willful and wanton? And the short answer is, it doesn't matter. It's incidental, but it's not consequential. Q Doesn't it matter as it relates to proximate cause? I mean, that's an element. You mentioned proximate cause is an element, and it's well settled that intentional tortfeasors whose conduct proximately causes their injuries can't receive damages from another tortfeasor. A That is not an element of the case in chief, willful and wanton. At issue is the city's conduct. Q No, but I'm talking about proximate cause. Was your client the proximate cause of the injuries? A The jury determined that we were a proximate cause of the injury. That is correct. But as counsel for the city said, no one can seek a windfall from their own willful and wanton liability, because the decedent may have been willfully and wantonly acting with respect to the robbery. What happens is once the contribution act is triggered, the jury then assesses an apportion's fault. The jury may evaluate the nature of the party's conduct, the plaintiff versus the defendant. The jury may have discussions about reckless, or they're going to, actually, they have the jury instructions, and they're told how to evaluate willful and wanton misconduct. And then how do we know what the jury came up with with respect to your Honor's question about whether they determined they were intentional? They apportioned fault 50-50. And they had an instruction where they could have assigned the decedent more than 50 percent at fault, which would lean into an argument that they determined the decedent was intentional, but they didn't. It was 50-50. They determined each party was only 50 percent at fault. And so that brings us to, I think, the city's argument about these special interrogatories. Well, as we've briefed, and I certainly can reiterate, but I have a more simple explanation I'd like to posit to the court. We submit that those interrogatories are flawed on their face for many, many reasons. And with respect to their contention, we waived any of our objections. The record speaks for itself. We made objections at trial, and the trial judge herself wanted to get on with the trial. And she, on the record, even made a statement that she did not give the plaintiff a full and fair opportunity to make objections. But the bottom line, under the LaPook decision, we can never waive whether those interrogatories can be reconciled with the verdict. And we submit they can. But here's the more, the better argument I'd like to make today. And it deals with our position concerning the general verdict. We alleged 11 theories of willful and want misconduct against the city. Five of those went to the jury on the issues instructions, and they are at page C1600. So what is anybody testing with respect to willful and wanton misconduct? The only thing the city should be testing is our case in chief. Did we prove duty, breach, proximate cause, and damages? But the city, to tender a proper special interrogatory, they would have had to test each of our five theories of willful and wanton liability. They would have had to ask the question about whether the city was willful and wanton when it shot strong multiple times. We didn't get that question. Whether the city was willful and wanton when they shot at the van occupied by strong, no such interrogatory. Whether the city was willful and wanton when they fired their weapons without justification, no such interrogatory. Whether the city engaged in contagion fire that resulted in injury to strong, no question. Whether the city used force likely to cause great bodily harm or death, no such question. So there's five interrogatories that the city would have been required to posit if it wanted to test whether we proved our case in chief. But it's even more complicated than that, because there were 19 police officers on the scene. So they would have hit, and the city is sued as the principal for the conduct of each or any or all of those 19 police officers. So quite frankly, it would have been their burden to test that general verdict and ask 19, if I take 19 officers by these five theories of liability, they would have had to tender 95 special interrogatories to test whether we proved our case in chief. How does interrogatory number three play into this? It proves that the jury agreed with that we proved our case in chief and that we, that the city failed or that the city was in fact willful and wanton. It's reconcilable with the verdict. And actually, I can be more specific, Your Honor. I'm getting a little ahead of myself. Okay. And getting back to your discussion of all the different causes of action that you raised, isn't that subsumed within the phrase in the instructions, engage in a course of action? No. No. I mean, how could the jury, the requirement, I mean, special interrogatories, they're not easy to craft, because all presumptions under the law must be in favor of the jury's verdict. So it's their burden to ask the proper interrogatory that is simple, straightforward, easily understandable. It's not the jury's obligation to try to figure out, well, we have this compound set of questions. What is the city really asking us? But it really bespeaks the issue, because none of those interrogatories, according to their argument, go to whether we proved our case in chief. The only time special interrogatories would be tendered with respect to the Contribution Act is if we test, if we tendered them. We would be the ones challenging whether they proved that 50 percent apportionment of fault. And it was our decision, rightfully, to not tender any interrogatories to challenge that. So what we have here with these interrogatories is a very convoluted argument and contention that somehow the whole verdict should fall. That's manifestly wrong on its face. And they argue that, segwaying into this idea of collateral estoppel and this idea that an intentional tortfeasor does not get to bring a cause of action. That's not the law. And, counsel, I think you were going to supplement your response regarding my question on interrogatory number three. Would you do that? Yes. Yes, Your Honor. Thank you. Okay. Interrogatory number three. At the time deadly force was used against David Strong, did the Chicago police officers who used deadly force reasonably believe that such force was necessary to prevent imminent death or great bodily harm? They said no. They did not believe that the, that supports the general verdict that the jury didn't believe that the police used justifiable or reasonable force when they shot 76 rounds of bullets into the van. And I think when you look at all three of these interrogatories together, it just underscores how massively confusing they were, how, you know, being compound. I mean, it was a, you know, the law does not impose this burden on the jury to figure out what exactly is being asked of them. Well, specifically, what is problematic about the first two interrogations? All right. Okay. The first two. Okay. Question number one. It's asking three different questions. At the time deadly force was used, did the Chicago police officers who used deadly force engage in a course of action without legal justification? Question number one. Did the Chicago police officers who used deadly force engage in a course of action without legal justification? Question number two. Which showed an actual or deliberate intention, that could stand as a separate question, to harm David Strong? There's a third question. What is the jury answering? Question number two. At the time deadly force was used, did the Chicago police officers who used deadly force engage in a course of action without legal justification? Question number one. Which showed an utter indifference or conscious disregard? Question number two. For the safety of others? No. What are they answering? These are vague. They're confusing. These cannot stand, as the appellate court correctly concluded. Again, it's their job to have tendered a proper interrogatory to find out what exactly are they testing. They're only testing the verdict. Is there a questioning consistent with the verdict? No. They're arguing about the three plaintiff's intentions, and they're conflating criminal intent with this civil cause of action. The civil cause of action has nothing to do with the plaintiff's intention to have burglarized a store. At issue is the city's conduct. Did the city act willfully and wantonly when it shot these bullets into the van, and therefore was the city a proximate cause of David Strong's death and the other two plaintiff's injuries? The jury said yes. And then again, I mean, no one's contending that the three plaintiffs were fault-free. The jury did its job and apportioned fault. Now, given my limited time, I'd just like to emphasize with respect to the collateral estoppel, there is nothing, their premise is legally wrong. There is not a single case that says collateral estoppel is a bar to a civil cause of action. Each and every case the parties have cited goes through the law school analysis of is there a bar to a civil cause of action? We have an issue, an issue litigated. We have different issues in the criminal and the civil case. And so there is no collateral estoppel. It simply cannot stand. The argument is that the mens rea of knowledge in the criminal case equates to tort intent under the restatement of torts. That's just incorrect. The mens rea of the intent in the criminal case was their intent to commit the burglary. They've tried to argue this chain, this mousetrap chain of events that therefore their, they had intent to cause their own injuries. You know, actually, for all of this, I've tried in anticipation of your honors challenging me, I've tried to conceive of a case where there could ever be a civil context where we have a bar. An actual bar to a cause of action. And the only thing I could come up with... Let me ask you this. You say an intent to cause their own injuries. Is that what we're looking at? Or are we looking at the fact that their own willful conduct caused their injuries? Isn't that different? It is different, your honor. And in the civil case, we're looking as to whether or not their conduct was a proximate cause of the injuries in the civil case. The criminal intent is not a bar to them proving up that they had an intent to rob a store. The city, notwithstanding that they may have been a proximate cause of their personal injuries, as opposed to stealing electronic materials, that the city was also a proximate cause. The city does not get to escape responsibility in the civil case. Whether or not they intended to rob a store does not absolve the city of responsibility from what they did to these three young men. So lastly, your honors, just to sum up, the only conceivable situation I could think of, and I don't even know if it's a proper term, but out in the popular vernacular we have this concept of suicide by cop. That's the only factual scenario I could conceive of where a plaintiff would go out with the intent to cause his own injury, his death. You know, we've read about situations around the country where a plaintiff goes out and might try to rob a store. Try to shoot at the police to cause them to kill him. But that still wouldn't be a bar to a cause of action. You know, if anybody brought a civil case, I think once the facts got sorted out as to who did what, in Illinois, what the jury would do probably is apportion more than 50% of the fault to the decedent in that case, and then the action would fail. But that's going through the proper exercise of proving up the case, then letting the jury evaluate contribution, apportioning the fault, and coming up with the numbers. You know, the percentages, the allocation of fault, keeping in mind the nature and extent of their conduct. So unless your honors have any more questions, we would request that you affirm the appellate court decision in its entirety. And thank you for your very kind attention. Thank you. Just a couple of points, Your Honors. To begin back with the issue of the fact that the defendant's intent was to commit a collateral estoppel, as to Plano's point that collateral estoppel applies to the issues actually litigated, we agree with that. The issues that were actually litigated, the intent and the proximate cause established by the criminal convictions are what we rely on here to apply the bar of estoppel. I do want to point out that counsel stated that the intent in the criminal case was to commit a battery. That was not the relevant intent. The intent that we rely on for estoppel effect is the intent to commit aggravated battery of a police, of a peace officer, not burglary. This isn't a case about burglary. This is a case about the use of the van as a deadly weapon to drive into a group of officers, which is entirely different than a simple burglary. Well, I think I need to be clear as to which jury, Your Honor. The civil jury or the criminal jury? The civil jury did assign a fault to the city. So I think it's fair to say that it found that the city was a proximate cause of the damages, yes. However, that brings us to the special interrogatories, because the civil jury also found that the officer's conduct was not intentionally or recklessly willful and wanton. So I want to unpack a few of the comments that were made by the civil jury. The civil jury was not allowed to have special interrogatories to test the claim of willful and wanton conduct, and that all that plaintiffs had to prove was duty, breach, proximate cause. But if you look at the issues and instructions, proving willful and wanton conduct was absolutely a piece of the claim that they had to prove. They, on C-1600, which counsel actually cited, the claim was that the conduct of the defendant was willful and wanton in one or more of the following respects. And so that was something that they had the burden of proof on. And we were entitled to use an interrogatory, as is common, to test whether they actually carried the burden of proof on that particular narrow point, which was dispositive of their claim. That, in May 2019, when these interrogatories were given, was the way interrogatories were used. In special interrogatories inquiring whether a defendant's willful and wanton conduct was common practice in cases involving alleged willful and wanton conduct of police or other municipal employees. So that was proper. There's nothing wrong with asking interrogatories dispositive of claim. The purpose of the interrogatory is not just to determine contribution, but also to test the general verdict. And that's what these did. They tested it on issues that applied to contribution, but they also applied to the underlying liability claim as well. And the jury's no answers to each of those interrogatories meant the jury especially found, when its focus was directed at that particular issue, which interrogatories do, that the plaintiff, that the plaintiff failed to prove willful and wanton conduct. And that required judgment. The court apparently believed that under Poole and Ziarko that these interrogatories were necessary. Yes, exactly. So is that the rule going forward? Well, the rule as to special interrogatories, they will be used a little bit differently. You don't have to have special interrogatories if there was some better way to put the issue before the jury. But here there's no suggestion that there was. And the trial court was very astute here. It spent all night, you know, each night of the trial studying the case law. And it presented, so let me back up a little bit. Plaintiff was determined to prove willful and wanton conduct. And we bring two kinds of claims here. Plaintiff insisted on bringing a claim of reckless willful and wanton conduct and intentional willful and wanton conduct. And the trial court advised the plaintiff's counsel, that's going to be confusing and it's going to require us to have the jury make these additional findings, because I've been reading Poole and Ziarko and they tell me you have to be clear as to what the jury found. So we have to do that. Now, plaintiff argues, well, that they were kind of, I mean, railroaded by the trial court into giving these interrogatories. And that's not fair, because plaintiff needed to come prepared to that jury conference with a way to address the issue of Poole and Ziarko. And because they wanted to bring these multiple claims, they should have proposed a way to put that to the jury. Plaintiff now is saying, well, there could have been 95 different interrogatories. You've heard a lot about possible ways they could have done it today, but the trial court didn't hear any of that, because nothing was suggested to her. Plaintiff made no objections to, so basically the plaintiff forced the trial court to come up with a solution herself. She worked very hard. She said, okay, we can, here's some interrogatories I think we could give to deal with this Poole and Ziarko issue. Plaintiff offered nothing to help her do that. But now complains that all of plaintiff's ideas were shot down. That's not true. In fact, if you look at the record, this is from record 2359, the trial court proposes the interrogatories, here, here's how I think we can handle this problem that you've created by bringing two separate claims. And the trial court specifically asks plaintiff's counsel, what do you want me to do? What do you want me to do to deal with this issue? And in response to that question, Strong's counsel was completely silent, offered nothing, neither an objection nor a counterproposal or any way to be helpful in dealing with this Poole-Ziarko issue. So in light of that, we do think waiver is appropriate here. Then we do think the record speaks for itself, because no objections were made at a time when it would have been helpful to deal with the issue in the court in putting together how to solve this puzzle of what happens when you've got a plaintiff who's trying to bring these two different theories, and one of them could give rise to a contribution claim. And we've got to be really clear about what the jury found here. That's a puzzle to solve. And the only people trying to solve that puzzle during the jury instruction conference was the court and the city's counsel. Plaintiff's counsel wasn't entitled to sit there silently offering no help, and now claim that basically, you know, all this was done over their heads. And the jury was not entitled to sit there and make their so-called objections. Now, I do, plaintiffs suggest that whether the questions were reconcilable with the verdict isn't something that can be waived, and that's absolutely true. So, you know, we submit the Court should hold that objections to form are waived here, but that as to the objections to whether, as to the question of whether the interrogatory is reconcilable with the verdict, that they simply were. And we've already gone over that territory. But that really is the only question before the Court, probably before the Court, that's not waived as to the interrogatories. One more point that was raised was as to interrogatory number three, I think there was a little confusion about the upshot of interrogatory number three, which asked whether the city's conduct satisfied a particular definition of legal justification. It was not dispositive, it would have been dispositive of a verdict against the city. Had the jury said it was legally justified in that way, and answered yes to interrogatory number three, then the city should have been entitled to judgment. That didn't happen. But the no answer to interrogatory number three was not dispositive, because there were three different definitions of legal justification put before the jury, and interrogatory number three only tested one of them. And if you look at C-1605, you'll see that legal justification was defined in three different ways. And so this interrogatory just tested one of those theories, perhaps the most obvious one, which is why it was chosen. We didn't give all three of them. But there were others. This one asked about force used to prevent death or great bodily harm, but legal justification also applies where force is used to prevent someone fleeing from a prison using a deadly weapon, like a loaded van, and also to prevent the escape of a person who has committed a forcible felony, like aggravated battery. So there were other possible ways in which the city was legally justified, and that's why interrogatory number three does not compel judgment for the plaintiffs. Unless the court has further questions, we request that the judgment of the appellate court be reversed. Thank you so much, both sides. Very complex issues. Both sides have done it succinctly and well. Thank you very much. This case, John Givens v. The City of Chicago, number 127-837, agenda 14, will be taken under advisory.